**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)
CHARLES H. LINEHAN (#307439)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHER DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUSTIN HALL, Individually and On Behalf of All Others Similarly Situated,<br><br>                   Plaintiff,<br><br>      v.<br><br>SUNRUN INC., LYNN JURICH, and BOB KOMIN,<br><br>               Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Justin Hall ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Sunrun Inc., ("Sunrun" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Sunrun; and (c) review of other publicly available information concerning Sunrun.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Sunrun's securities between September 10, 2015, and May 3, 2017, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Sunrun claims to provide clean, solar energy to homeowners at a significant savings to traditional utility energy.  The Company's core solar service offerings are provided through the Company's lease and power purchase agreements ("PPAs").  The Company claims that its solar service offerings provide the flexibility and savings that come from purchasing solar energy, but without the significant upfront investment of purchasing a solar energy system. Pursuant to the Company's solar service offerings, Sunrun installs solar energy systems on customers' homes and provides them the solar power produced by those systems for a 20-year initial term.

3.      On May 3, 2017, *The Wall Street Journal* ("*WSJ*") reported that the SEC was investigating whether Sunrun adequately disclosed customer contract cancelations to investors. The *WSJ* elaborated, reporting that the SEC issued a subpoena to Sunrun and interviewed current and former employees about the adequacy of its disclosures on account cancellations.  The *WSJ* reported that representatives for Sunrun didn't respond to multiple requests for comment on the investigation.  The *WSJ* also reported that Sunrun may have engaged in corrupt sales practices,

---

[1] "Defendants" refers to Sunrun Inc., Lynn Jurich, and Bob Komin, collectively.

stating that Sunrun customer Katarzyna Herink, "said she listened to a persuasive pitch from a Sunrun salesman at her house in Long Island, New York, last year and considered moving forward with installing solar panels on her roof" but that "[d]ays later, the company told her she had signed a contract and they were going to start installation, without providing her any details about the cost or showing her the contract."  According to the report, when she complained to Sunrun, the Company told her that "a document she had initialed on the salesman's iPad during his initial visit constituted the contract."

4.    On this news, the Company's stock price fell $0.46 per share, or 8.83%, to close at $4.75 per share on May 3, 2017, on unusually heavy trading volume.

5.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company was concealing customer cancelations from investors; (2) that the Company engaged in corrupt sales practices; (3) that, as a result of the foregoing, the Company was exposed to potential civil and criminal liability; and (4) that, as a result of the foregoing, Defendants' statements about Sunrun's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts

1  charged herein, including the dissemination of materially false and/or misleading information,

2  occurred in substantial part in this Judicial District.  In addition, the Company's principal

3  executive offices are located in this Judicial District.

4          10.    In connection with the acts, transactions, and conduct alleged herein, Defendants

5  directly and indirectly used the means and instrumentalities of interstate commerce, including the

6  United States mail, interstate telephone communications, and the facilities of a national securities

7  exchange.

8                                     **PARTIES**

9          11.    Plaintiff Justin Hall, as set forth in the accompanying certification, incorporated by

10  reference herein, purchased Sunrun securities during the Class Period, and suffered damages as a

11  result of the federal securities law violations and false and/or misleading statements and/or

12  material omissions alleged herein.

13         12.    Defendant Sunrun Inc. is incorporated in Delaware and its headquarters are in San

14  Francisco, California.   Sunrun's common stock trades on the NASDAQ Stock Market

15  ("NASDAQ") under the symbol "RUN."

16         13.    Defendant Lynn Jurich ("Jurich") was the Chief Executive officer ("CEO") of

17  Sunrun at all relevant times.

18         14.    Defendant Bob Komin ("Komin") was the Chief Financial officer ("CFO") of

19  Sunrun at all relevant times.

20         15.    Defendants Jurich and Komin (collectively the "Individual Defendants"), because

21  of their positions with the Company, possessed the power and authority to control the contents of

22  Sunrun's reports to the SEC, press releases and presentations to securities analysts, money and

23  portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were

24  provided with copies of the Company's reports and press releases alleged herein to be misleading

25  prior to, or shortly after, their issuance and had the ability and opportunity to prevent their

26  issuance or cause them to be corrected.  Because of their positions and access to material non-

27  public information available to them, the Individual Defendants knew that the adverse facts

28  specified herein had not been disclosed to, and were being concealed from, the public, and that the

positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Sunrun claims to provide clean, solar energy to homeowners at a significant savings to traditional utility energy. The Company's core solar service offerings are provided through the Company's lease and PPAs. The Company claims that its solar service offerings provide the flexibility and savings that come from purchasing solar energy, but without the significant upfront investment of purchasing a solar energy system. Pursuant to the Company's solar service offerings, Sunrun installs solar energy systems on customers' homes and provides them the solar power produced by those systems for a 20-year initial term.

**Materially False and Misleading
Statements Issued During the Class Period**

17.     The Class Period begins on September 10, 2015. On that day the Company issued a press release entitled "Sunrun Reports Second Quarter 2015 Financial Results." Therein, the Company, in relevant part, stated:

> SAN FRANCISCO, Sept. 10, 2015 (GLOBE NEWSWIRE) --Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the second quarter ended June 30, 2015.

> **Second Quarter 2015 Operating Highlights**

> - 61.2 MW booked, increased 59% quarter-over-quarter and 70% organically year-over-year.
> - 42.4 MW deployed, representing organic growth of 76% year-over-year.
> - Cumulative MW deployed of 472.5 MW, an increase of 46% year-over-year.
> - Quarterly NPV creation was $37.2 million, a 60% increase quarter-over-quarter.
> - Pre-tax Project Value per watt was $5.00, compared to $5.02 in Q1 2015.
> - Creation Cost per watt of $4.08 decreased $0.28, or 6% quarter-over-quarter.

> "2015 has been an exciting year for Sunrun. We gained momentum towards our goal of creating the industry's most valuable and satisfied customer base," said Lynn Jurich, Sunrun's CEO. "We ended the quarter with approximately 87,000 customers and a 60% increase in our quarterly NPV to $37.2 million, which we achieved through accelerated reductions in creation costs."

**Key Operating Metrics**

In the second quarter of 2015, MW booked increased to 61.2 MW from 36.1 MW year-over-year and MW deployed increased to 42.4 MW from 24.1 MW year-over-year, excluding the impact of an opportunistic asset portfolio purchase in the second quarter of 2014.  This resulted in 70% organic year-over-year growth in MW booked and 76% organic year-over-year growth in MW deployed.

NPV created in the second quarter of 2015 was $37.2 million, compared to $23.3 million in the first quarter of 2015.  Pre-tax project value per watt was $5.00, compared to $5.02 in the first quarter of 2015, which excludes substantially all of the value of SRECs.  Creation cost per watt was $4.08 in the second quarter of 2015 compared to $4.36 in the first quarter of 2015.

Estimated nominal contracted payments remaining as of June 30, 2015 was $1,917 million, compared to $1,249 million as of June 30, 2014, an increase of 53%.  Estimated retained value as of June 30, 2015 was $1,223 million compared to $787 million as of June 30, 2014, an increase of 55%.

**2015 Financing Activities**

We completed our initial public offering in August, raising approximately $220 million in net proceeds.  In addition, in April, we entered into a $205 million secured working capital facility.  In July, we completed a $111 million asset backed securitization with a 4.5% weighted average interest rate.  As of September 10, 2015, our pipeline of expected tax equity funding represented capacity for 215 MWs of future installations.

**Second Quarter 2015 GAAP Results**

Total revenue grew to $72.7 million in the second quarter of 2015 from $51.9 million in the second quarter of 2014.  Operating leases and incentives revenue grew 50% year-over-year to $34.5 million.  Solar energy systems and product sales were $38.2 million in the second quarter of 2015, an increase of 32% year-over-year.

Total cost of revenue was $61.7 million, an increase of 45% year-over-year. Total operating expenses were $118.9 million in the second quarter of 2015, up 44% year-over-year.

Net income attributable to common stockholders was $7.5 million in the second quarter of 2015, compared to a net loss of $18.0 million in the first quarter of 2015 and $17.2 million in the second quarter of 2014.

**Guidance for Third Quarter and Full Year 2015**

The following statements are based on current expectations.  These statements are forward-looking and actual results may differ materially.

For the third quarter of 2015, we expect 54 to 55 MW deployed, which represents 81% organic growth year-over-year at the midpoint.  For the full year 2015, we currently forecast MW deployed in the range of 205 MW.

18.    On September 15, 2015, the Company filed its quarterly report on Form 10-Q for

the 2015 fiscal second quarter.  The 10-Q was signed by Defendants Jurich and Komin, and reaffirmed the Company's statements about its financial results contained in the press release issued on September 10, 2015.

19.     On November 12, 2015, the Company issued a press release entitled "Sunrun Reports Third Quarter 2015 Financial Results."  Therein, the Company, in relevant part, stated:

> SAN FRANCISCO, Nov. 12, 2015 (GLOBE NEWSWIRE) -- Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the third quarter ended September 30, 2015.
>
> **Third Quarter 2015 Operating Highlights**
>
> - 94.5 MW booked, an increase of 54% quarter-over-quarter and 115% year-over-year.
> - 55.7 MW deployed, representing 85% organic growth year-over-year.
> - Cumulative MW deployed of 528.2 MW.
> - Quarterly NPV creation was $49.5 million, an increase of 33% quarter-over-quarter.
> - Pre-tax Project Value per watt was $4.70, compared to $5.00 in the prior quarter.
> - Creation Cost per watt of $3.75 decreased $0.33, or 8% quarter-over-quarter.
>
> "Our NPV growth in the third quarter demonstrates our ongoing focus on value creation," said Lynn Jurich, Sunrun's CEO. "Successful execution on MW deployed and bookings growth means we are poised to continue our strong growth in 2016.  We recently added our 100,000[th] solar customer, a new milestone as we rapidly add to the nation's second largest residential solar fleet."
>
> **Key Operating Metrics**
>
> In the third quarter of 2015, MW booked increased to 94.5 MW from 44.0 MW in the third quarter of 2014 and MW deployed increased to 55.7 MW from 30.1 MW in the third quarter of 2014, excluding the impact of an opportunistic asset portfolio purchase in 2014. This resulted in 115% year-over-year growth in MW booked and 85% year-over-year organic growth in MW deployed.
>
> NPV created in the third quarter of 2015 was $49.5 million, compared to $37.2 million in the second quarter of 2015.  Pre-tax project value per watt was $4.70, compared to $5.00 in the second quarter of 2015. Creation cost per watt was $3.75 in the third quarter of 2015 compared to $4.08 in the second quarter of 2015.
>
> Estimated nominal contracted payments remaining as of September 30, 2015 totaled $2,219 million, compared to $1,423 million as of September 30, 2014, an increase of 56%.  Estimated retained value as of September 30, 2015 was $1,368 million compared to $897 million as of September 30, 2014, an increase of 53%.
>
> **Financing Activities**
>
> As of November 12, 2015, we have closed on tax equity commitments to fund

$4,018 million in cumulative value of solar systems, an increase of $916 million from the $3,102 million in system value funded by tax equity commitments as of the end of the second quarter.

**Third Quarter 2015 GAAP Results**

Total revenue grew to $82.6 million in the third quarter of 2015 from $56.1 million in the third quarter of 2014. Operating leases and incentives revenue grew 46% year-over-year to $31.7 million. Solar energy systems and product sales were $51.0 million in the third quarter of 2015, an increase of 48% year-over-year.

Total cost of revenue was $75.2 million, an increase of 52% year-over-year. Total operating expenses were $145.4 million in the third quarter of 2015, up 56% year-over-year.

Net loss attributable to common stockholders was $2.8 million in the third quarter of 2015, compared to a net income of $7.5 million in the second quarter of 2015 and a net loss of $15.2 million in the third quarter of 2014.

Non-GAAP net loss per share available to common shareholders, excluding a non-recurring, non-cash deemed dividend to preferred shareholders in connection with our IPO, was ($0.04) per share. GAAP net loss per share available to common shareholders was ($0.41) per share.

**Guidance for Full Year 2015**

The following statements are based on current expectations. These statements are forward-looking and actual results may differ materially.

For the full year 2015, we expect MW deployed of approximately 205, which represents 79% organic growth year-over-year.

20.    On November 13, 2015, the Company filed its quarterly report on Form 10-Q for the 2015 fiscal third quarter. The 10-Q was signed by Defendants Jurich and Komin, and reaffirmed the Company's statements about its financial results contained in the press release issued on November 12, 2015.

21.    On March 10, 2016, the Company issued a press release entitled "Sunrun Reports Fourth Quarter and Full Year 2015 Financial Results." Therein, the Company, in relevant part, stated:

SAN FRANCISCO, March 10, 2016 (GLOBE NEWSWIRE) -- Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the fourth quarter and full year ended December 31, 2015.

**Fourth Quarter 2015 Operating Highlights**

- 80 MW booked, an increase of 117% year-over-year.

- 68 MW deployed, representing 83% growth year-over-year.
- Cumulative MW deployed of 596 MW.
- Quarterly NPV creation was $50 million, an increase of 1% quarter-over-quarter.
- Pre-tax Project Value per watt was $4.50, compared to $4.70 in the prior quarter.
- Creation Cost per watt of $3.64 decreased $0.11, or 3% quarter-over-quarter.

**Full Year 2015 Operating Highlights**

- 274 MW booked, an increase of 85% organic growth year-over-year.
- 203 MW deployed, representing 76% organic growth year-over-year.
- Creation Cost per watt of $3.89.
- Aggregate NPV creation of $160 million.

"Our customer-centric solar as a service business model has proven to be highly scalable even beyond our early expectations," said Lynn Jurich, chief executive officer of Sunrun. "As industry fundamentals continue to improve, we believe that our consistent focus on customer net present value, and careful management of liquidity, positions us well in 2016 towards our goal to deliver the industry's most valuable and satisfied customer base."

**Key Operating Metrics**

In the fourth quarter of 2015, MW booked increased to 80 MW from 37 MW in the fourth quarter of 2014 and MW deployed increased to 68 MW from 37 MW in the fourth quarter of 2014. This resulted in 117% year-over-year growth in MW booked and 83% year-over-year growth in MW deployed.

In full year 2015, MW booked increased to 274 MW from 148 MW in full year 2014 and MW deployed increased to 203 MW from 115 MW in full year 2014 (excluding 14.7 MW associated with an opportunistic asset purchase), slightly below our guidance of 205 MW for 2015, primarily due to the closure of the Nevada market. This resulted in 85% MW year-over-year organic growth in MW booked and 76% year-over-year organic growth in MW deployed.

NPV created in the fourth quarter of 2015 was $50.0 million, compared to $49.5 million in the third quarter of 2015, with $160 million of NPV created in full year 2015. Pre-tax project value per watt was $4.50, compared to $4.70 in the third quarter of 2015. Creation cost per watt was $3.64 in the fourth quarter of 2015 compared to $3.75 in the third quarter of 2015.

Estimated nominal contracted payments remaining as of December 31, 2015 totaled $2.4 billion, compared to $1.6 billion as of December 31, 2014, an increase of 51%. Estimated retained value as of December 31, 2015 was $1.5 billion compared to $1.0 billion as of December 31, 2014, an increase of 52%.

**Financing Activities**

We have sufficient tax equity committed or subject to executed term sheets to fund our growth plans into November.

In January, we closed a $250 million credit facility at an approximate weighted average cost of 4.5%, which meets our expected volume and liquidity needs for the

year.     Between the A and B tranches, the advance rate on this facility is approximately 75% of contracted cash flows available for distribution after tax equity dividends.  The initial draw on this facility is a significant factor in our expectation of being approximately cash flow breakeven in Q1 2016.

**Fourth Quarter 2015 GAAP Results**

Total revenue grew to $99.6 million in the fourth quarter of 2015 from $60.1 million in the fourth quarter of 2014. In the fourth quarter of 2015, operating leases and incentives revenue grew 41% year-over-year to $29.6 million. Solar energy systems and product sales were $70.1 million in the fourth quarter of 2015, an increase of 79% year-over-year.

Total cost of revenue was $96.9 million, an increase of 72% year-over-year. Total operating expenses were $164.8 million in the fourth quarter of 2015, an increase of 61% year-over-year.

Net loss attributable to common stockholders was $15.0 million in the fourth quarter of 2015, compared to a net loss of $2.8 million in the third quarter of 2015 and a net loss of $26.7 million in the fourth quarter of 2014.

GAAP net loss per share available to common shareholders was ($0.15) per share.

**Full Year 2015 GAAP Results**

Total revenue grew to $304.6 million in full year 2015 from $198.6 million in 2014. Operating leases and incentives revenue grew 40% year-over-year to $118.0 million. Solar energy systems and product sales were $186.6 million in 2015, an increase of 63% year-over-year.

Total cost of revenue was $280.5 million, an increase of 62% year-over-year. Total operating expenses were $523.8 million in 2015, an increase of 58% year-over-year.

Net loss attributable to common stockholders was $28.2 million in 2015, compared to a net loss of $70.9 million in 2014.

GAAP net loss per share available to common shareholders was ($0.96) per share.

**Guidance for Q1 and Full Year 2016**

The following statements are based on current expectations. These statements are forward-looking and actual results may differ materially.

For 2016, we expect to deploy approximately 285 MW. We expect our Sunrun built business to grow at a nearly 100% growth rate.

We will continue to target a $1 per watt of NPV across the full year despite compression due to our exit from Nevada and capacity investments to support the doubling of the direct business.

In Q1, we expect to deploy 56 MW. We have removed approximately 12 MW of backlog from Nevada that would have been deployed in the quarter.

22.     On March 11, 2016, the Company filed its annual report on Form 10-K for the

2015 fiscal year.  The 10-K was signed by Defendant Jurich, and reaffirmed the Company's statements about its financial results contained in the press release issued on March 10, 2016.  In the 10-K, the Company reported "Megawatts Booked" of 273.8 for fiscal year 2015 and stated "*Megawatts Booked* represents the aggregate megawatt production capacity of our solar energy systems sold to customers or subject to an executed customer agreement, net of cancellations."

     23.    On May 12, 2016, the Company issued a press release entitled "Sunrun Reports First Quarter 2016 Financial Results."  Therein, the Company, in relevant part, stated:

SAN FRANCISCO, May 12, 2016 (GLOBE NEWSWIRE) -- Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the first quarter ended March 31, 2016.

**First Quarter 2016 Operating Highlights**

- Total deployments of 60 MW, an increase of 63% year-over-year.  Sunrun-built deployments grew 148% year-over-year.
- Cumulative MW deployed of 656 MW.
- Pre-tax Project Value per watt was $4.51, flat with Q4 2015.
- Pro forma Creation Cost (excluding one-time items related to Nevada exit) per watt of $4.11 decreased $0.25, or 6% year-over-year.

"The industry has reached a new milestone with one million solar homes underscoring the increasing power and relevance of rooftop solar in our energy future," said Lynn Jurich, chief executive officer. "Sunrun has already saved our customers more than $100 million dollars. Our new BrightBox storage offering extends the profit potential and reach of solar energy."

**Key Operating Metrics**

In the first quarter of 2016, total MW deployed increased to 60 MW from 37 MW in the first quarter of 2015, a 63% year-over-year increase.

Pre-tax project value per watt was $4.51, compared to $5.02 in the first quarter of 2015. Pro forma creation cost was $4.11 per watt (excluding one-time items related to Nevada exit) in the first quarter of 2016 compared to $4.36 in the first quarter of 2015.

Pro forma net bookings (excluding cancellation of Nevada orders) were 56 MW, representing 46% year-over-year growth.

Pro forma NPV created in the first quarter of 2016 was $20.6 million, compared to $23.3 million in the first quarter of 2015.  Estimated nominal contracted payments remaining as of March 31, 2016 totaled $2.6 billion, up $920 million or 54% since March 31, 2015.  Estimated retained value as of March 31, 2016 was $1.6 billion, up $546 million, or 50%, since March 31, 2015.

**Financing Activities**

As of May 12, 2016, with the upsize of our previously announced back-leverage aggregation facility, and the addition of new tax equity partnerships, we have increased our total capacity to meet expected project finance needs well into 2017.

**First Quarter 2016 GAAP Results**

Total revenue grew to $98.7 million in the first quarter of 2016, up $49.1 million, or 99% from the first quarter of 2015. Operating leases and incentives revenue grew 55% year-over-year to $34.5 million. Solar energy systems and product sales grew 135% year-over-year to $64.2 million.

Total cost of revenue was $95.6 million, an increase of 105% year-over-year. Total operating expenses were $165.6 million, an increase of 75% year-over-year. Net income attributable to common stockholders was $13.1 million in the first quarter of 2016, compared to a net loss of $15.0 million in the fourth quarter of 2015, and a net loss of $18.0 million in the first quarter of 2015.

GAAP net earnings per share attributable to common shareholders was $0.13 per share.

**Guidance for Q2 and Full Year 2016**

The following statements are based on current expectations. These statements are forward-looking and actual results may differ materially.

For 2016, we expect deployments of approximately 285 MW but we will focus primarily on delivering NPV of above $1 per watt in the second half of the year. We believe this NPV growth is supported by expected growth rates of nearly 100% in our Sunrun built business, which is double the market growth rate and lower unit level creation costs.

In Q2, we expect to deploy approximately 60 MW.

24.     On May 13, 2016, the Company filed its quarterly report on Form 10-Q for the 2016 fiscal first quarter. The 10-Q was signed by Defendants Jurich and Komin, and reaffirmed the Company's statements about its financial results contained in the press release issued on May 12, 2016.

25.     On August 11, 2016, the Company issued a press release entitled "Sunrun Reports Second Quarter 2016 Financial Results." Therein, the Company, in relevant part, stated:

SAN    FRANCISCO, Aug.    11,    2016 (GLOBE    NEWSWIRE)    -- Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the second quarter ended June 30, 2016.

**Second Quarter 2016 Operating Highlights**

- Total deployments of 65 MW, an increase of 54% year-over-year. Sunrun-

built deployments grew 128% year-over-year.
- Cumulative MW deployed of 721 MW.
- Pre-tax Project Value per watt increased to $4.61 from $4.51 in the prior quarter.
- Creation Cost per watt improved by $0.44, or 11% from Q1 2016.

"We are pleased with our performance in the second quarter as we continue to grow and create customer value in 2016," said Lynn Jurich, Sunrun's chief executive officer. "We deployed 65 MW in Q2 while improving creation costs over 10% compared to the first quarter and delivering $51 million of NPV. We believe we are well positioned to continue to build growth and customer value that will differentiate us as the leader in bringing local clean energy direct to consumers."

**Key Operating Metrics**

In the second quarter of 2016, total MW deployed increased to 65 MW from 42 MW in the second quarter of 2015, a 54% year-over-year increase.

Pre-tax project value per watt was $4.61, compared to $4.51 in the first quarter of 2016. Creation cost was $3.67 per watt in the second quarter of 2016 compared to $4.11 in the first quarter of 2016.

Net bookings were 74 MW, representing 21% year-over-year growth.

NPV created in the second quarter of 2016 was $51 million, compared to $21 million in the first quarter of 2016. Estimated nominal contracted payments remaining as of June 30, 2016 totaled $2.7 billion, up $812 million or 42% since June 30, 2015. Estimated retained value as of June 30, 2016 was $1.7 billion, up $503 million, or 41%, since June 30, 2015.

**Financing Activities**

As of August 10, 2016, with the upsizes of our previously announced back-leverage aggregation facility and working capital facility, we have increased our total capacity to meet expected project finance needs through Q1 2017.

**Second Quarter 2016 GAAP Results**

Total revenue grew to $122.5 million in the second quarter of 2016, up $49.8 million, or 69% from the second quarter of 2015. Operating leases and incentives revenue grew 32% year-over-year to $45.4 million. Solar energy systems and product sales grew 102% year-over-year to $77.1 million.

Total cost of revenue was $100.2 million, an increase of 62% year-over-year. Total operating expenses were $171.0 million, an increase of 44% year-over-year.
Net income available to common stockholders was $32.6 million in the second quarter of 2016, compared to net income of $13.1 million in the first quarter of 2016, and $0.0 million net income in the second quarter of 2015.

GAAP diluted net earnings per share available to common shareholders was $0.31 per share.

**Guidance for Q3 and Full Year 2016**

The following statements are based on current expectations. These statements are

forward-looking and actual results may differ materially.

For 2016, we expect deployments in the range of 270 to 280 MW, focusing primarily on delivering NPV of above $1 per watt in the second half of the year. In Q3, we expect to deploy 72 MW.

26.    On the same day, August 11, 2016, the Company filed its quarterly report on Form 10-Q for the 2016 fiscal second quarter.  The 10-Q was signed by Defendants Jurich and Komin, and reaffirmed the Company's statements about its financial results contained in the press release issued the same day.

27.    On November 10, 2016, the Company issued a press release entitled "Sunrun Reports Third Quarter 2016 Financial Results."  Therein, the Company, in relevant part, stated:

SAN    FRANCISCO, Nov.    10,    2016 (GLOBE    NEWSWIRE)    -- Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the third quarter ended September 30, 2016.

**Third Quarter 2016 Operating Highlights**

- Total deployments of 80 MW, an increase of 43% year-over-year
- Net Present Value created of $76 million, an increase of 53% year-over-year
- Creation Cost per watt improved by $0.38, or 10% from Q3 2015
- Cumulative MW deployed of 801 MW

"We are pleased to deliver Q3 results that beat targets on customer installations, net present value and cost improvements, and to raise guidance slightly for the full year," said Lynn Jurich, Sunrun's chief executive officer. "We have achieved these targets by consistently executing our strategy of delivering the industry's most valuable and satisfied customer base, aligning our product offerings with customer demand and taking share in attractive markets. We are proud to partner with our growing base of customers to lead a transition to clean energy that will grow for decades to come."

**Key Operating Metrics**

In the third quarter of 2016, total MW deployed increased to 80 MW from 56 MW in the third quarter of 2015, a 43% year-over-year increase.

NPV created in the third quarter of 2016 was $76 million, a 53% increase from $50 million in the third quarter of 2015.  Pre-tax project value per watt was $4.43, compared to $4.70 in the third quarter of 2015. Creation cost per watt was $3.37 in the third quarter of 2016 compared to $3.75 in the third quarter of 2015. NPV per watt created in the third quarter of 2016 was $1.06 compared to $0.95 in the third quarter of 2015.

Net bookings were 79 MW, up 5 MW from Q2 2016.

Estimated    nominal    contracted    payments    remaining    as    of September    30,

2016 totaled $3.0 billion, up $813 million or 37% since September 30, 2015. Estimated retained value as of September 30, 2016 was $1.9 billion, up $539 million, or 39%, since September 30, 2015.

**Financing Activities**

As of November 10, 2016, we have project finance capacity through approximately Q2 2017.

**Third Quarter 2016 GAAP Results**

Total revenue grew to $112.0 million in the third quarter of 2016, up $29.4 million, or 36% from the third quarter of 2015. Operating leases and incentives revenue grew 36% year-over-year to $43.2 million. Solar energy systems and product sales grew 35% year-over-year to $68.9 million.

Total cost of revenue was $98.0 million, an increase of 30% year-over-year. Total operating expenses were $163.1 million, an increase of 12% year-over-year.

Net income available to common stockholders was $16.9 million in the third quarter of 2016, compared to net income available to common stockholders of $32.6 million in the second quarter of 2016, and $27.7 million net loss available to common stockholders in the third quarter of 2015.

Diluted net earnings per share available to common shareholders was $0.16 per share.

**Guidance for Q4 and Full Year 2016**

The following statements are based on current expectations. These statements are forward-looking and actual results may differ materially.

In Q4, we expect to deploy approximately 80 MW. As such, for full year 2016, we are raising deployment guidance from 270 to 280 MW to approximately 285 MW.

28.    On the same day, November 10, 2016, the Company filed its quarterly report on Form 10-Q for the 2016 fiscal third quarter. The 10-Q was signed by Defendants Jurich and Komin, and reaffirmed the Company's statements about its financial results contained in the press release issued the same day.

29.    On March 8, 2017, the Company issued a press release entitled "Sunrun Reports Fourth Quarter and Full Year 2016 Financial Results." Therein, the Company, in relevant part, stated:

SAN    FRANCISCO, March    08,    2017 (GLOBE    NEWSWIRE)    -- Sunrun (Nasdaq:RUN), the largest dedicated residential solar company in the United States, today announced financial results for the fourth quarter and full year ended December 31, 2016.

**Fourth Quarter 2016 Operating Highlights**

- Total deployments of 77 MW, an increase of 13% year-over-year
- Net Present Value created of $67 million, an increase of 47% year-over-year
- Creation Cost per watt improved by $0.31, or 8% from Q4 2015

**Full Year 2016 Operating Highlights**

- Total deployments of 282 MW, an increase of 39% year-over-year
- Net Present Value created of $213 million, an increase of 64% year-over-year
- Creation Cost per watt improved by $0.45, or 11% from full year 2015
- Cumulative MW deployed of 879 MW
- Net Earning Assets reached $1 billion, reflecting a 30% increase year-over-year

"Our 2016 performance continues to validate our business model. We grew our portfolio of installed solar energy systems by 47% to 879 MW with improving unit-level economics," said Lynn Jurich, Sunrun's chief executive officer. "The reach of our multi-channel business model allowed us to gain market share and deliver a valuable service to our customers and our country's energy infrastructure."

**Key Operating Metrics**

In the fourth quarter of 2016, total MW deployed increased to 77 MW from 68 MW in the fourth quarter of 2015, a 13% year-over-year increase.

In full year 2016, MW deployed increased to 282 MW from 203 MW in full year 2015, a 39% year-over-year increase.

In the fourth quarter of 2016, MW booked were 72 MW, down 13% from the fourth quarter of 2015.

Creation cost per watt was $3.41 in the fourth quarter of 2016 compared to $3.72 in the fourth quarter of 2015. NPV per watt created in the fourth quarter of 2016 was $1.00 compared to $0.78 in the fourth quarter of 2015.

NPV created in the fourth quarter of 2016 was $67 million, a 47% increase from $46 million in the fourth quarter of 2015. Pre-tax project value per watt was $4.41, compared to $4.50 in the fourth quarter of 2015.

Gross earning assets as of December 31, 2016 was $1.8 billion, up $535 million, or 42%, since December 31, 2015. Net earning assets as of December 31, 2016 were $1.0 billion, up $232 million, or 30% from the prior year.

During the fourth quarter, we reviewed our Key Operating Metrics to ensure our reported metrics remain aligned with how we currently operate our business. Based on our growing operating experience, unique business model and industry trends, we have modified our method for calculating MW Booked and Creation Cost, and replaced Estimated Retained Value and Estimated Nominal Contracted Payments Remaining with Gross Earning Assets and Net Earning Assets. We believe these changes will provide investors with closer leading indicators of performance and trends and are better aligned with our current sales compensation and key operating objectives.

MW Booked are now calculated as sold systems or systems subject to a Customer Agreement for which we have internal confirmation that the system has met our installation requirements for size, equipment and design (which constitutes our definition of reaching notice to proceed, or NTP), net of cancellations. Since NTP occurs closer to installation, there is a meaningfully higher realization of these systems as deployments, and it is less susceptible to reported seasonal fluctuations. Creation Cost is now calculated so that the single component not previously based on either leased or total deployments now will be. The portion of period sales and marketing expenses previously divided by MW Booked is now divided by MW Deployed.

Finally, management believes Gross Earning Assets (which includes only discounted cash flows for deployed systems, rather than systems subject to a Customer Agreement) provides greater clarity and comparability between periods than Estimated Retained Value and Estimated Nominal Contracted Payments Remaining as it excludes the effect of cancellations that occur between the execution of a Customer Agreement and deployment. Prior periods showing both the updated and previous methodology and a summary of the Key Operating Metrics has been included in this release.

**Financing Activities**

In December 2016, we entered into a strategic partnership with National Grid PLC ("National Grid"), which includes a national collaborative grid services pilot and a $100 million direct investment by National Grid in a partnership that will own approximately 200 MW of our rooftop solar systems across the U.S. The strategic partnership also includes a joint marketing agreement that will initially target approximately 100,000 single family homes in downstate New York.

As of March 8, 2017, our tax equity pipeline remains robust, with closed transactions and executed terms sheets that provide us runway well into Q4 of 2017. Our current pipeline of back-leverage and project equity provides us runway into Q3 of 2017.

**Fourth Quarter 2016 GAAP Results**

Total revenue grew to $120.6 million in the fourth quarter of 2016, up $20.9 million, or 21% from the fourth quarter of 2015. Operating leases and incentives revenue grew 53% year-over-year to $45.3 million. Solar energy systems and product sales grew 7% year-over-year to $75.3 million.

Total cost of revenue was $105.4 million, an increase of 9% year-over-year. Total operating expenses were $169.2 million, an increase of 3% year-over-year.

Net income available to common stockholders was $29.0 million in the fourth quarter of 2016, compared to net income available to common stockholders of $16.9 million in the third quarter of 2016, and $15.0 million net loss available to common stockholders in the fourth quarter of 2015.

Diluted net earnings per share available to common shareholders was $0.27 per share.

**Full Year 2016 GAAP Results**

Total revenue grew to $453.9 million in full year 2016, up $149.3 million, or 49%

from 2015. Operating leases and incentives revenue grew 43% year-over-year to $168.4 million. Solar energy systems and product sales grew 53% year-over-year to $285.5 million.

Total cost of revenue was $399.2 million, an increase of 42% year-over-year. Total operating expenses were $668.8 million, an increase of 28% year-over-year.
Net income available to common stockholders was $91.7 million in full year 2016, compared to net loss available to common stockholders of $53.1 million in 2015.

Diluted net earnings per share available to common shareholders was $0.87 per share.

**Guidance for Q1 and Full Year 2017**

The following statements are based on current expectations. These statements are forward-looking and actual results may differ materially.

In Q1, we expect to deploy approximately 69 MW, reflecting 15% year-over-year growth.

For the full year 2017, we expect to deploy 325 MWs, reflecting 15% year-over-year growth.

30.     On the same day, March 8, 2017, the Company filed its annual report on Form 10-K for the 2016 fiscal year.   The 10-K was signed by Defendant Jurich, and reaffirmed the Company's statements about its financial results contained in the press release issued on the same day.   In the 10-K, the Company reported "Megawatts Booked" of 285 for fiscal year 2016 and stated "*Megawatts Booked* represents the aggregate megawatt production capacity of our solar energy systems, whether sold directly to customers or subject to an executed Customer Agreement, for which we have confirmation that the systems have reached NTP, net of cancellations."

31.     The above statements identified in ¶¶17-30 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.   Specifically, Defendants failed to disclose: (1) that the Company was concealing customer cancelations from investors; (2) that the Company engaged in corrupt sales practices; (3) that, as a result of the foregoing, the Company was exposed to potential civil and criminal liability; and (4) that, as a result of the foregoing, Defendants' statements about Sunrun's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

32.    On May 3, 2017, the *WSJ* reported that the SEC was investigating whether Sunrun adequately disclosed customer contract cancelations to investors.  The *WSJ* elaborated, reporting that the SEC issued a subpoena to Sunrun and interviewed current and former employees about the adequacy of its disclosures on account cancellations.  The *WSJ* also reported that representatives for Sunrun didn't respond to multiple requests for comment on the investigation.  In greater part, the *WSJ* reported:

> Federal regulators are investigating whether solar-energy companies are masking how many customers they are losing, according to a person familiar with the matter.

> The Securities and Exchange Commission is examining whether San Francisco-based Sunrun Inc. . . . and Elon Musk's San Mateo, Calif.-based SolarCity Corp. have adequately disclosed how many customers have canceled contracts after signing up for a home solar-energy system, the person said.

> Investors use that cancellation metric as one way to gauge the companies' health. Companies typically give customers a few days after signing a contract, or even up until the time of installation, to back out of a deal.

> Some solar-energy companies have recently disclosed in public filings and earnings calls that increasing numbers of customers are canceling, but the companies have provided few details about the number of cancellations or their impact on the companies' business.

> The SEC recently issued a subpoena to Sunrun and interviewed current and former employees about the adequacy of its disclosures on account cancellations, said the person familiar with the investigation. The SEC is also looking at SolarCity, the person said.

> An SEC spokesman declined to comment. Representatives for Sunrun didn't respond to multiple requests for comment. A spokeswoman for SolarCity said in a statement that the company "has remained focused on reporting the quality of our installed assets, not pre-install cancellation rates. Our growth projections have always been based on actual deployments."

> *        *        *

> Hundreds of complaints have been filed against solar companies to attorneys general in Texas, Oregon, California and Florida, with customers saying they are paying more on their utility bills, not less as they were promised, and have been sold expensive systems they can't afford, according to Freedom of Information Act requests filed by the Campaign for Accountability, a consumer-watchdog group, and according to lawsuits filed by customers.

> Some customers say they were strong-armed into buying solar-energy systems by sales representatives who threatened to sue them if they didn't proceed with a project or to place a so-called mechanic's lien on their homes—a measure used to

force a homeowner to pay for a home-improvement project. Others say they didn't realize they had actually signed contracts. Many said they believed they were just giving permission for a consultation.

*        *        *

Cancellations grew to be so large at SolarCity that in early 2016, before the company was sold to Tesla, about half of its customers were backing out of contracts before solar panels could be installed, according to people familiar with the matter.

At Sunrun, that cancellation figure grew to be as high as 40% earlier this year, according to people familiar with the figure. The cancellation rates were especially high among customers who were approached by salespeople at their doorstep or while they were shopping at big-box stores, these people say.

The increase in cancellations caused Sunrun to halve its growth expectations in 2016 from 80% to 40%, one of these people said.

Most of those figures weren't disclosed to investors. Instead, the companies have provided limited transparency.

In its annual report in March, Sunrun said, "We have experienced increased customer cancellations in certain markets during 2016." The company does report how many systems it has installed net of cancellations, but it doesn't break out the number of cancellations.

SolarCity said the number of cancellations increased last year, but didn't say by how much.

Company executives, salespeople and homeowners blame the rise in cancellations on what they describe as aggressive sales tactics used by the industry.

Katarzyna Herink, 35, said she listened to a persuasive pitch from a Sunrun salesman at her house in Long Island, New York, last year and considered moving forward with installing solar panels on her roof.

Days later, the company told her she had signed a contract and they were going to start installation, without providing her any details about the cost or showing her the contract, Ms. Herink said.

When she complained, Sunrun told her a document she had initialed on the salesman's iPad during his initial visit constituted the contract, Ms. Herink said. Ms. Herink immediately canceled the deal.

"We actually wanted to do it, but it was such a scary experience," she said. "Now we've decided to stay away from it."

33.    On this news, the Company's stock price fell $0.46 per share, or 8.83%, to close at $4.75 per share on May 3, 2017, on unusually heavy trading volume.

## **CLASS ACTION ALLEGATIONS**

34.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

1    Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired

2    Sunrun's securities between September 10, 2015, and May 3, 2017, inclusive, and who were

3    damaged thereby (the "Class").   Excluded from the Class are Defendants, the officers and

4    directors of the Company, at all relevant times, members of their immediate families and their

5    legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had

6    a controlling interest.

7         35.    The members of the Class are so numerous that joinder of all members is

8    impracticable.   Throughout the Class Period, Sunrun's common stock actively traded on the

9    NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can

10   only be ascertained through appropriate discovery, Plaintiff believes that there are at least

11   hundreds or thousands of members in the proposed Class.  Millions of Sunrun shares were traded

12   publicly during the Class Period on the NASDAQ.  As of March 6, 2017, Sunrun had 104,639,279

13   shares of common stock outstanding.   Record owners and other members of the Class may be

14   identified from records maintained by Sunrun or its transfer agent and may be notified of the

15   pendency of this action by mail, using the form of notice similar to that customarily used in

16   securities class actions.

17        36.    Plaintiff's claims are typical of the claims of the members of the Class as all

18   members of the Class are similarly affected by Defendants' wrongful conduct in violation of

19   federal law that is complained of herein.

20        37.    Plaintiff will fairly and adequately protect the interests of the members of the Class

21   and has retained counsel competent and experienced in class and securities litigation.

22        38.    Common questions of law and fact exist as to all members of the Class and

23   predominate over any questions solely affecting individual members of the Class.   Among the

24   questions of law and fact common to the Class are:

25        (a)    whether the federal securities laws were violated by Defendants' acts as alleged

26   herein;

27        (b)    whether statements made by Defendants to the investing public during the Class

28   Period omitted and/or misrepresented material facts about the business, operations, and prospects

1    of Sunrun; and

2        (c)    to what extent the members of the Class have sustained damages and the proper

3    measure of damages.

4        39.    A class action is superior to all other available methods for the fair and efficient

5    adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the

6    damages suffered by individual Class members may be relatively small, the expense and burden of

7    individual litigation makes it impossible for members of the Class to individually redress the

8    wrongs done to them.  There will be no difficulty in the management of this action as a class

9    action.

10                              **UNDISCLOSED ADVERSE FACTS**

11        40.    The market for Sunrun's securities was open, well-developed and efficient at all

12    relevant times.  As a result of these materially false and/or misleading statements, and/or failures

13    to disclose, Sunrun's securities traded at artificially inflated prices during the Class Period.

14    Plaintiff and other members of the Class purchased or otherwise acquired Sunrun's securities

15    relying upon the integrity of the market price of the Company's securities and market information

16    relating to Sunrun, and have been damaged thereby.

17        41.    During the Class Period, Defendants materially misled the investing public, thereby

18    inflating the price of Sunrun's securities, by publicly issuing false and/or misleading statements

19    and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth

20    herein, not false and/or misleading.  The statements and omissions were materially false and/or

21    misleading because they failed to disclose material adverse information and/or misrepresented the

22    truth about Sunrun's business, operations, and prospects as alleged herein.

23        42.    At all relevant times, the material misrepresentations and omissions particularized

24    in this Complaint directly or proximately caused or were a substantial contributing cause of the

25    damages sustained by Plaintiff and other members of the Class.  As described herein, during the

26    Class Period, Defendants made or caused to be made a series of materially false and/or misleading

27    statements about Sunrun's financial well-being and prospects.  These material misstatements

28    and/or omissions had the cause and effect of creating in the market an unrealistically positive

assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Sunrun's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Sunrun, their control over, and/or receipt and/or modification of Sunrun's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sunrun, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Sunrun's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to

disclose, Sunrun's securities traded at artificially inflated prices during the Class Period. On December 18, 2015, the Company's stock price closed at a Class Period high of $13.74 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Sunrun's securities and market information relating to Sunrun, and have been damaged thereby.

47.    During the Class Period, the artificial inflation of Sunrun's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Sunrun's business, prospects, and operations. These material misstatements and/or omissions created an unrealistically positive assessment of Sunrun and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.    At all relevant times, the market for Sunrun's securities was an efficient market for the following reasons, among others:

(a)    Sunrun stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Sunrun filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Sunrun regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Sunrun was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain

1    customers of their respective brokerage firms.  Each of these reports was publicly available and

2    entered the public marketplace.

3              49.     As a result of the foregoing, the market for Sunrun's securities promptly digested

4    current information regarding Sunrun from all publicly available sources and reflected such

5    information in Sunrun's stock price. Under these circumstances, all purchasers of Sunrun's

6    securities during the Class Period suffered similar injury through their purchase of Sunrun's

7    securities at artificially inflated prices and a presumption of reliance applies.

8              50.     A Class-wide presumption of reliance is also appropriate in this action under the

9    Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972),

10   because the Class's claims are, in large part, grounded on Defendants' material misstatements

11   and/or omissions.  Because this action involves Defendants' failure to disclose material adverse

12   information regarding the Company's business operations and financial prospects—information

13   that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to

14   recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable

15   investor might have considered them important in making investment decisions.  Given the

16   importance of the Class Period material misstatements and omissions set forth above, that

17   requirement is satisfied here.

## NO SAFE HARBOR

19             51.     The statutory safe harbor provided for forward-looking statements under certain

20   circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

21   The statements alleged to be false and misleading herein all relate to then-existing facts and

22   conditions. In addition, to the extent certain of the statements alleged to be false may be

23   characterized as forward looking, they were not identified as "forward-looking statements" when

24   made and there were no meaningful cautionary statements identifying important factors that could

25   cause actual results to differ materially from those in the purportedly forward-looking statements.

26   In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-

27   looking statements pleaded herein, Defendants are liable for those false forward-looking

28   statements because at the time each of those forward-looking statements was made, the speaker

had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Sunrun who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

52.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

53.    During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Sunrun's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

54.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sunrun's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

55.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Sunrun's financial well-being and prospects, as specified herein.

56.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sunrun's value and performance and

continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Sunrun and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

57.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

58.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sunrun's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether

those statements were false or misleading.

59.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Sunrun's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sunrun's securities during the Class Period at artificially high prices and were damaged thereby.

60.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Sunrun was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sunrun securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

61.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

63.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64.     Individual Defendants acted as controlling persons of Sunrun within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and

their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

65.    In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

66.    As set forth above, Sunrun and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

1  (d)  Such other and further relief as the Court may deem just and proper.

2         **JURY TRIAL DEMANDED**

3  Plaintiff hereby demands a trial by jury.

4

Dated: May 4, 2017      **GLANCY PRONGAY & MURRAY LLP**

5

6        By: _s/ Robert V. Prongay_

7        Lionel Z. Glancy
         Robert V. Prongay

8        Lesley F. Portnoy
         Charles H. Linehan

9        1925 Century Park East, Suite 2100
         Los Angeles, CA 90067

10       Telephone: (310) 201-9150
         Facsimile: (310) 201-9160

11       Email: rprongay@glancylaw.com

12

        *Attorneys for Plaintiff*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# SWORN CERTIFICATION OF PLAINTIFF

## SUNRUN, INC. SECURITIES LITIGATION

I, Justin Hall individually, and/or in my capacity as trustee and/or principal for accounts listed on Schedule A, certify that:

1.    I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2.    I did not purchase Sunrun, Inc. the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.    I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.    My transactions in Sunrun, Inc. during the Class Period set forth in the Complaint are as follows:

      (See attached transactions)

5.    I have not served as a representative party on behalf of a class under this title during the last three years, except for the following:

6.    I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

5/4/2017
_____
Date

DocuSigned by:

_Justin Hall_
AC145F0D19C346E...
_____
Justin Hall

**Justin Hall's Transactions in
Sunrun Inc (RUN)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 03/06/2017 | Bought | 1,000 | $5.2100 |
| 03/06/2017 | Bought | 900 | $5.2199 |
| 03/06/2017 | Bought | 200 | $5.2150 |
| 03/06/2017 | Bought | 100 | $5.2168 |
| 03/06/2017 | Bought | 100 | $5.2157 |
| 03/06/2017 | Bought | 300 | $5.2167 |
| 03/06/2017 | Bought | 1,325 | $5.2181 |